## THE LADY FRANKLIN.

1. A bill of lading given by a person who was agent of several vessels all alike engaged in transporting goods brought to certain waters by a railway line, but having separate owners, and not connected by any joint undertaking to be responsible for one another's breaches of contract— the bill, through mistake of the agent, acknowledging that certain goods had been shipped on the vessel *A.*, when, in fact, they had been previously shipped on vessel *B.*, and a bill of lading given accordingly— will not make the vessel **A.** responsible, the goods having been lost by the vessel B., and the suit being one by shippers of the merchandise against the owner of the vessel A., and the case being thus unembarrassed by any question of a *bonâ fide* purchase on the strength of the bill of lading.

2. While a bill of lading, in so far as it is a contract, cannot be explained by parol, yet being a receipt as well as a contract, it may in that regard be so explained, especially when used as the foundation of a suit between the original parties to it.

APPEAL from the Circuit Court for the Northern District of Illinois, in which court King & Co. had libelled the propeller Lady Franklin, for non-delivery of certain flour.

The libel alleged, that the libellants, in the month of November, 1863, by their agent, Edward Sanderson, delivered at Milwaukee, to the steamer Lady Franklin, 340 barrels of flour, to be transported to Port Sarnia, on the St. Clair River, for which shipment they received a bill of lading, but that 290 barrels of the flour were never delivered. As a consequence, they claim a maritime lien on the vessel for the value of the flour.

The answer denied that the flour in controversy was ever delivered to the master, or shipped on board of the steamer.

The case was this:

There was, in 1863, a line of steamers engaged in the lake service from Milwaukee to Port Sarnia, and running in connection with the Grand Trunk Railway. The Lady Franklin was one of them. But each boat had separate owners, and there was no joint undertaking that any one of the boats should be responsible for the breach of a contract or misconduct of another. This line of steamers had a particular

warehouse in Milwaukee, at which they stopped, and which was used to receive and store freight for them; one Courtenay was the agent of this warehouse, and he also acted as agent for the boats in engaging and shipping freight. The cargo of flour in dispute, *which was owned by the libellants, and of which they were the real shippers,* was received by Courtenay for them, through Sanderson, their agent, with an agreement to ship it for them on one of this line of steamers; and, in point of fact, 50 barrels were shipped on the Antelope, one of the line, and received by the libellants. The remaining 290 barrels, for which the lien is claimed on the Franklin, were also shipped on the 7th of November by the Water Witch, another boat in the same line, and consigned to the libellants, but were not received by them, the boat having foundered at sea. Notwithstanding these shipments, a clerk in the warehouse, under Courtenay, in the absence of Courtenay, in ignorance that the flour had been previously shipped on the Antelope and Water Witch, but supposing it still in the warehouse for shipment, by mistake gave to Sanderson, the agent of the libellants, a bill of lading.

Attaching the bill to a draft upon the libellants, for the value of the flour, Sanderson soon afterwards drew on them for this value, and they paid the draft. The flour never arriving, they libelled the *Lady Franklin*, in the District Court of the district, attaching this bill of lading to their libel.

The District Court dismissed the libel, and the Circuit Court having affirmed the decree, the case was now here for review.

*Mr. Robert Rae, for the appellants:*

1. The signing of the bills of lading by the authorized agent of the vessel, after delivery of the property into his possession and control, binds the vessel, and has the same force and effect as if signed by the master.*

2. The owner of the vessel is estopped as against a con-

---

* Rawls et al. *v.* Deshler, 3 Keys, 577; Dows *v.* Greene, 24 New York, 638; Coosa River Steamboat Company *v.* Barclay, 30 Alabama, 120; Putnam *v.* Tillotson, 13 Metcalf, 517.

signee of the bill of lading, when either has taken it for a valuable consideration upon the faith of the acknowledgments which it contains, to deny the truth of the statements to which he has given credit, by the signature of his agent, so far as these statements relate to matters which are, *or ought to be,* within his knowledge.*

In this case, the consignee advanced on the faith of the bill of lading.

3. Parol testimony cannot be received in courts of admiralty, any more than in courts of law, to contradict the terms of a bill of lading.† Nor can courts of admiralty exercise chancery powers to reform maritime contracts.‡

4. When a written contract is attacked on the grounds of containing some material mistake, the evidence of mistake must be very strong. Lord Hardwicke says,§ that in such a case, he would require "the strongest proof possible," which words Lord Eldon observes, "leave a weighty caution to future judges."

And in *Shelburne* v. *Inchiquin,*‖ Lord Thurlow demanded "strong irrefragable evidence."

*Mr. Goodwin, contra :*

1. A maritime contract of affreightment, which shall bind the vessel to the merchandise, for the due performance of the contract, commences only with the delivery of the goods on board, or on a lighter or barge, belonging to and controlled by the boat, or into the custody of some officer of the boat, to be carried on board. No such delivery of the flour is shown in this case. It never was received on board the Lady Franklin, or into the custody of any officer or agent of the boat, to be carried on board. Courtenay was the warehouse-

---

* Sears *v.* Wingate, 3 Allen, 103; Ward *v.* Whitney, 3 Sanford, 399; Sutton *v.* Kettel, 1 Sprague, 309.

† 3 Greenleaf on Evidence, § 402.

‡ Andrews *v.* Essex Insurance Company, 3 Mason, 7; The Ives, Newbury, 205.

§ Langley *v.* Brown, 2 Atkyn, 203.

‖ 1 Brown's Chancery Cases, 340.

man, and received the flour in store as such. He held it as such warehouseman, not as agent for any, or either, or all of the different boats running in that line, but like any forwarding merchant, *pro hac vice*, the agent of the shipper to forward the merchandise by some of the boats of that line. In fact, he had forwarded this flour by the Antelope and Water Witch.

2. It is now well settled, both in English and American law, that so far as the fact of the receipt of the goods, or the quantity received, is concerned, the bill of lading is in the nature of a receipt, not conclusive between the shipowner and shipper, but open to explanation and evidence of the real facts.* A false bill of lading, whether by mistake or fraud, is beyond the power of the master or other agent of the shipowner, and cannot be made to bind the vessel, especially under the circumstances of this case.

3. There is, really, no question of an innocent purchase for value in this case.

Mr. Justice DAVIS delivered the opinion of the court.

The attempt made in the prosecution of this libel, to charge this vessel for the non-delivery of a cargo, which she never received, and, therefore, could not deliver, because of a false bill of lading, cannot be successful, and we are somewhat surprised that the point is pressed here.

Courtenay was a warehouseman in Milwaukee, and, although he acted as agent for the different steamers of the Grand Trunk line, he did not receive the flour to be sent by one particular steamer in preference to another. His engagement had this meaning, and nothing more: to forward the flour with all practicable expedition, by the first suitable steamer of the line which arrived in port that would carry it. Having actually shipped it in good condition in advance of the arrival of the Franklin in port, by seaworthy steamers, against which nothing is alleged, he discharged his obligations to the libellants. It would be strange, indeed, if the

---

* Abbott on Shipping, 7th Am. Ed. 324, *m*; 1 Parsons' Maritime Law, 137, n. 2, and Cases.

owners of the Franklin were made to suffer, because the common agent of all the boats had, through inadvertence, given a receipt for merchandise not on the boat, or in the warehouse even, but which was then on board other boats, on its way to its destination.   The case is not embarassed by any question of a *bonâ fide* purchase on the strength of the bill of lading, for the libellants themselves were the real shippers.   Such is the claim of the libel, and it is supported by the evidence, for Sanderson swears the flour belonged to the libellants, on its delivery at the warehouse.   In so far as a bill of lading is a contract, it cannot be explained by parol; but if a contract, it is also a receipt, and in that regard, it may be explained, especially when it is used as the foundation of a suit between the original parties to it—the shippers of the merchandise, and the owner of the vessel.

The principle is elementary, and needs the citation of no authority to sustain it.

In this case the bill of lading acknowledges the receipt of so much flour, and is *primâ facie* evidence of the fact.   It is, however, not conclusive on the point, but may be contradicted by oral testimony.

The doctrine that the obligation between ship and cargo is mutual and reciprocal, and does not attach until the cargo is on board, or in the custody of the master, has been so often discussed and so long settled, that it would be useless labor to restate it, or the principles which lie at its foundation. The case of the *Schooner Freeman* v. *Buckingham*, decided by this court,* is decisive of this case.   It is true the bill of lading there was obtained fraudulently, while here it was given by mistake; but the principle is the same, and the court held in that case that there could be no lien, notwithstanding the bill of lading.

The court say, "There was no cargo to which the ship could be bound, and there was no contract for the performance of which the ship could stand as security."

JUDGMENT AFFIRMED.

* 18 Howard, 192.