### THE SHUBERT v. THE BROWN.[1]

### THE EINAR v. SAME.

(*District Court, D. Delaware.* February 14, 1891.)

1. COLLISION—TUGS AND TOWS—LIABILITY OF TUG.
     The tug Brown, towing the Shubert astern, passing up the Delaware, met the tug Ivanhoe, towing astern the Einar, passing down, in a calm night, a mist hanging over the water to the height of 10 or 15 feet. The side lights of the vessels were hidden, but the Brown had been steering by the high lights of the Ivanhoe, believing them those at Finn's point, and did not discover her mistake until, when rounding to, to anchor, she found herself close to the Ivanhoe. She then went ahead full speed hard a-port, blowing one blast, which was answered by a tug further down the river, both together being mistaken by the Ivanhoe for a two-blast from the Brown. The Ivanhoe starboarded, but immediately changed her helm to avoid a collision between herself and the Brown, the tows colliding. *Held*, as the Brown was in fault for mistaking the high lights of the Ivanhoe, in porting before she received an answer from her, and in not sounding her fog signals, she was responsible for the damages to the Shubert.

2. SAME—FOG—MISTAKING SIGNALS.
     The tug Ivanhoe, passing down the Delaware at least six miles an hour, in a thickening fog, through a channel one-fourth mile wide, and straight two miles below and four miles above, and sounding no fog signal, was towing the Einar, which had a pilot on board. She met, nearly head on, the tug Brown passing up with a tow. When close together the Brown sounded a blast, which, being answered by a tug below, was believed by the Ivanhoe to be a two-blast from the Brown. The Ivanhoe starboarded without answering; and, seeing that a collision was imminent, ported, the tows colliding. *Held*, as the Ivanhoe was in fault in not giving fog signals, in not keeping off from the Brown, and in changing course without answering the signals, and by her negligence had contributed to the collision, and as the duty of the pilot was to control both tow and tug, the Einar could not recover from the Brown.

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

In Admiralty.

Libel for damages for collision by the bark Einar against the tug Brown, and libel for collision by the schooner Shubert against the same. The Einar was in control of William S. Schallenger, a Delaware pilot.

*John Q. Lane,* for the Einar.

*Henry R. Edmunds,* for the Shubert.

*Bradford & Vandegrift,* for the Brown.

WALES, J. These cases were heard together. They grew out of a collision between the schooner William H. Shubert and the bark Einar, off Reedy island, in the Delaware river, at about 9:30 P. M., on March 21, 1890. The material facts are these: The bark, towed by the tug Ivanhoe, was going down, and the schooner, towed by the tug Brown, was coming up, the river. About a mile astern of the Brown and her tow, the tug Argus, with a vessel in tow, was also coming up the river. Each tow was astern of and attached to its tug by a hawser. The weather was calm, the wind being light from the south-east, and the tide young flood. A mist or light fog hung above the water to the height of 10 or 15 feet, but it was clear overhead. The speed of the Ivanhoe was seven miles, and that of the Brown at the rate of four to four and a half miles, an hour. The tugs, with their tows, were in mid-channel, and were practically strung out in a straight line. The lights on each were properly set and burning brightly. The bark was in charge of a licensed Delaware pilot. The schooner was in charge of her own master. For a few minutes before the collision the top lights of the tugs had been visible to each other. Their side lights were more or less obscured by the fog. By an unfortunate mistake of the captain of the Brown, he had been for some time steering for the top lights of the Ivanhoe, under the belief that they were the range lights at Finn's point, on the eastern shore of the river, and he did not discover this mistake until he was rounding to for the purpose of coming to an anchor, when he found himself in close proximity to the Ivanhoe, and, as some of witnesses say, crossing the bow of the latter. In this emergency, having previously slowed down, he now gave orders to go ahead at full speed, blew one whistle, and put his helm hard a-port. The Argus answered the Brown's signal with a single whistle, and the Ivanhoe, mistaking these signals as both coming from the Brown, replied with two whistles, and put her helm to the starboard. The captain of the Ivanhoe, seeing that by pursuing this course he would run down and sink the Brown, immediately changed his helm, and went to the westward. The result of these sudden changes in the movements of the Brown and of the Ivanhoe was that the former broke square off to the east, and the latter to the west, thus leaving their tows to their fate. In a few seconds the schooner and the bark came together, nearly head on, and with serious damage to each. The schooner has filed libels against the bark and the Ivanhoe, and the bark has filed libels against the schooner and the Ivanhoe, in the eastern district of Pennsylvania. The schooner and the bark have sued the Brown in this district.

Was the Brown in fault or in any way negligently contributory to the collision? In view of the undisputed facts, this question must be answered in the affirmative. Her first error was in mistaking the lights of the Ivanhoe for the stationary lights at Finn's point, which latter were some four miles above the place of collision, and it is no excuse to say that the same mistake was made by those on board of the Argus, which was astern of the Brown, for the mistake could and would have been prevented had the Brown sounded a fog signal, as required by the sailing rules, (Rev. St. p. 817.) The Brown committed a further error by porting her helm before receiving the proper answering signal from the Ivanhoe. *The Johnson,* 9 Wall. 155. That the fog had been growing denser just before the collision is evident from the admission and acts of the captain of the Brown, and also from the fact that the Argus on that account was compelled to anchor shortly after. The prime and inexcusable fault of the Brown was in her failure to sound a fog signal at proper intervals of time while under way. Such signals would have made known her position to vessels coming from the opposite direction, and by neglecting to make them she was brought into the danger of a collision, from which she had barely time to save herself at the expense of her tow. The mistake of the lights and the confusion of steering signals, when it was too late to correct them, followed as natural consequences from the omission to blow the fog whistles. As the schooner appears to have been without fault, to have followed in the wake of and depended entirely on the Brown for her course, she is entitled to a decree for her damages.

Is the Brown also liable to the Einar for the injury received by the latter? The consideration of this question requires an inquiry into the relationship between the bark and her tug, the Ivanhoe, for it is clear that, if the bark and the tug were under the command and direction of the same officer, they may be jointly responsible for the torts of the latter. The law is well settled that "where the officers and crew of the tow, as well as the officers and crew of the tug, participate in the navigation of the vessel, the tug alone, or the tow alone, or both jointly, may be liable for the consequences, (of a collision,) according to the circumstances, as the one or the other, or both jointly, were either deficient in skill, or were culpably inattentive in the performance of their duties." *The Clarita,* 23 Wall. 11. As already stated, the bark was in charge of a pilot, and if he was also at the same time in command of the tug, and was invested with the right to control her movements as well as those of the bark, it follows that the latter must be responsible for the torts of the former, if they were the results of the pilot's negligence. This is not a new rule. The subject came before the supreme court of the United States, for the first time, in the case of *The China,* 7 Wall. 53, in which it was held that, though the master of a vessel was compelled to take a pilot, it did not exonerate the vessel from liability to respond for torts done by it, though the results wholly of the pilot's negligence. The dissenting opinion of two of the judges, while concurring in the judgment rendered by the court, differed as to the proper construction to be given to

the state statutes, which required the master to pay pilotage fees, whether he employed a pilot or not. The minority opinion contended that the statutes did not compel a master to surrender the navigation of his ship to the licensed pilot or prevent him from continuing in command of his ship. *The China* was affirmed by *The Merrimac*, 14 Wall. 202, the syllabus of which is as follows:

"The fact that a steam-ship is in charge and under control of a pilot, taken on board conformably to the laws of the state, is not a defense to a proceeding *in rem* against her for a tortious collision, the laws of the state providing only that if a ship, coming into her waters, refuse to receive on board and pay a pilot, the master shall pay the refused pilot half pilotage." (The Delaware statutes require the master to pay full pilot fees in such cases.)

Any doubts that might have remained as to the meaning and extent of the decisions just cited are set at rest by *The Civilta*, 103 U. S. 699, in which some of the facts are similar to those in the case now before us. In that case the tow was attached to the tug by a hawser, and followed in her wake. The ship had on board a pilot, and the tug was subject to his orders. The court, after reviewing the evidence, says:

"Both vessels were under the general orders of the pilot on the ship, but it is also expressly found as a fact that the tug actually received no orders from him. 'The ship and the tug were in law one vessel, and that a vessel under steam. * * *' Both vessels were responsible for the navigation, as has already been seen,—the ship because her pilot was in general charge, and the tug because of the duty which rested on her to act on her own responsibility in the situation in which she was placed. The tug was in fault because she did not on her own motion change her course so as to keep both herself and the ship out of the way, and the ship because her pilot, who was in charge of both ship and tug, neglected to give the necessary directions to the tug when he saw, or ought to have seen, that no precautions were taken by the tug to avoid the approaching danger. Had either the ship or the tug done its duty under the circumstances, there could have been no collision."

This rule of joint responsibility of tow and tug, when both are in general charge of a pilot, as established by these authorities, was followed in this circuit in *The Maggie S. Hart*, 38 Fed. Rep. 765, which was decided by Judge BUTLER in the eastern district of Pennsylvania. Special reference has been made to these cases in anticipation of the objection that the rule of joint responsibility, as declared in all of them, may seem harsh and unjust, because it deprives the owners of a ship of the control of their property, for the time being, and makes it answerable for the negligence or misconduct of a pilot, who is put in command of it by the law, often without their choice or consent. The objection may appear to be more natural and reasonable from the fact that, under the same circumstances, the English law exonerates a ship from all liability for damages when in command of a pilot, and the tort arises from his negligence or want of skill. But it is now too late to discuss the exact justice of the rule which has been uniformly recognized in the admiralty courts of the United States. This much, however, may be said in support of the American law on the subject, that the master of a ship retains the right to displace the pilot for intoxication, gross incompetency,

or obvious neglect of duty, and to resume the command of his vessel, and it is thus made incumbent on the master to exercise proper care and vigilance in the navigation of his vessel, notwithstanding the presence of the pilot. *Camp* v. *The Marcellus*, 1 Cliff. 481. The effect of adopting the English rule would be that, in every case of collision, through the negligence of the pilot, the injured vessel would have no redress except against the pilot, who rarely, if ever, would be able to make good the loss.

Applying the law, as we find it, to the facts of the present case, we are constrained to dismiss the libel of the Einar on the ground that her pilot was neglectful of his duty, and by his negligence directly contributed to her collision with the Shubert. The Ivanhoe, which was or should have been under the control of the pilot on board the Einar, was going at the rate of not less than six miles an hour, through a gradually thickening fog, which concealed the hulls of approaching vessels, although their top lights were visible, as well as the range lights at Finn's point. Under these conditions it was the duty of the tug to sound fog signals as required by law, and to proceed with the utmost caution in her navigation. For the protection of the bark the pilot should have called the attention of the tug to the necessity of making the signals. The channel of the river, at the place of the collision, is a quarter of a mile wide, and is straight for two miles below and four miles above, so that there was ample room for keeping out of the way of other craft. The pilot saw the top lights of the Brown half a mile distant, coming directly up the channel, nearly head on to the Ivanhoe, and yet gave no orders to the latter, but let her take her own course. The Ivanhoe mistook the single whistle of the Brown and the single whistle of the Argus as both coming from the Brown, though, according to the testimony, they were easily distinguishable; and this blunder led to the additional mistakes of the Ivanhoe in first attempting to go to the east, and then suddenly turning to the west, to save herself, at the sacrifice of the bark, or, as the captain of the Ivanhoe says, to prevent his running down the Brown, which was a much smaller tug than his own. The Ivanhoe was also guilty of the like error as the Brown in changing her helm before getting a response to her signal that she was going to the left. The pilot admits that, during the time the tugs were approaching each other, he gave no directions to the Ivanhoe—*First*, because he thought he had no right to do so; and, *secondly*, because the captain of the Ivanhoe knew the river as well as he did, thus showing that he was ignorant of the extent of his authority, or indifferent and careless in its exercise. He seemed to think that his business was limited to keeping the bark from running aground, whereas it was his duty to see that she avoided all obstructions that might be in her way, whether in motion or at rest, and for this purpose he had the right to direct the course of the Ivanhoe. There can be no doubt that if the Brown and the Ivanhoe had made the proper use of their fog signals, and observed ordinary care and vigilance in directing their courses, the collision would not have happened. The libel of the Einar is dismissed, with costs. The final decree for the amount

which shall be ascertained to be due to the Shubert for damages will be subject to the deduction of such sums as may be paid to the Shubert by the Einar and the Ivanhoe, under the decree of the district court of the eastern district of Pennsylvania.