## THE EUGENE.

### JACOBI et al. v. THE EUGENE.

(District Court, D. Washington, N. D. October 23. 1897.)

ADMIRALTY—JURISDICTION IN REM—BREACH OF CONTRACT OF CARRIAGE.

A suit in rem is not maintainable for breach of an executory contract to carry a passenger on a particular vessel, where the vessel has never entered on the performance thereof. The lien upon which the right to proceed in rem depends does not attach until the passenger has placed himself within the care and under the control of the master.

In Admiralty. Libel in rem by Gaston Jacobi and Charles Ruff against the steamer Eugene, to recover passage money, and damages for breach of contract to carry the libelants, with their baggage, from Seattle, via St. Michaels, in Alaska, to Dawson City, in the Northwest Territory. Heard on exceptions to the libel.

John C. Hogan, for libelants.
J. C. Flanders, for claimant.

HANFORD, District Judge. Each of the libelants alleges that the Portland & Alaska Trading & Transportation Company, a corporation, being at the time owner of the steamship Eugene, entered into a contract to carry him, with his baggage, on board the steamer Bristol, from the city of Seattle, in the state of Washington, to St. Michaels, in Alaska, and thence on board the steamer Eugene to Dawson City, and thereupon issued two tickets, one being for passage from the city of Seattle to St. Michaels, for which he paid $100, and the other for passage from St. Michaels to Dawson City, for which he paid $200. A breach of the contract is alleged, in this: that the steamer Eugene wholly failed to go to St. Michaels to receive the libelants, as agreed. The libelants allege that they have been injured and damaged by loss of the amount paid for their passage, and the cost of a miner's outfit, and loss of time, for which they each claim damages in the sum of $1,000.

The authorities are conflicting on the point as to whether a suit in rem can be maintained for breach of an executory contract to carry

a passenger on board a particular vessel, where the vessel has not entered on performance. In the case of The Pacific, Fed. Cas. No. 10,643, it was held by Mr. Justice Nelson that, in the case of a contract maritime in its nature and subject, it is not essential, to give jurisdiction to an admiralty court in a suit in rem, that the vessel should have entered on the performance, or that the breach should have occurred in the course of the voyage, and that, when the contract has been entered into for the conveyance of goods or persons in a particular ship, the liabilities of the owner and of the ship attach at the same time. In the case of The General Sheridan, Fed. Cas. No. 5,319, Judge Blatchford held that the decision by Mr. Justice Nelson in The Pacific Case had been overruled by the supreme court in the cases of The Freeman v. Buckingham, 18 How. 182, and Vandewater v. Mills, 19 How. 82. These two cases may be regarded as the leading cases on opposite sides of the question. In a dictum by Judge Lowell in Oakes v. Richardson, Fed. Cas. No. 10,390, which was a suit in personam, the decisions of the supreme court supposed to overrule The Pacific Case are treated as dicta, not having the force of decisions. In the case of The Williams, Fed. Cas. No. 17,710, in an elaborate opinion showing a careful examination of the numerous authorities, Judge Emmons sustained and followed the ruling of Mr. Justice Nelson. In the case of Scott v. The Ira Chaffee, 2 Fed. 401, Mr. Justice Brown, then sitting as district judge for the Eastern district of Michigan, and who appears, by the report of The Williams Case, to have successfully argued for the jurisdiction before Judge Emmons, denied the authority of that decision. Referring to the decisions of the supreme court in 18 and 19 How., he says:

"Those cases cannot be said to have definitely fixed the measure of liability. They seem, rather, to have announced in general terms a doctrine from which the supreme court has not as yet shown any disposition to recede."

Then, after reviewing at length the American and foreign authorities, he reaches the conclusion that the owner of a cargo has no lien on the vessel for the breach of a contract of affreightment until the cargo, or some portion, has been laden on board, or delivered to the master. In the case of The Monte A., 12 Fed. 331, Judge Brown, of the Southern district of New York, carefully reviews the decisions, and in his conclusion sustains the ruling of his predecessor in the case of The General Sheridan. In subsequent decisions the supreme court seems to have regarded the declarations contained in the decisions in 18 and 19 How. as expressing the doctrine of that court, and not as mere dicta. Mr. Justice Davis, in the opinion of the court in the case of The Lady Franklin, 8 Wall. 325–329, says:

"The doctrine that the obligation between the ship and cargo is mutual and reciprocal, and does not attach until the cargo is on board, or in the custody of the master, has been so often discussed, and so long settled, that it would be useless labor to reiterate it, or the principles which lie at its foundation. The case of The Freeman v. Buckingham (decided by this court) 18 How. 182, is decisive of this case. It is true, the bill of lading there was obtained fraudulently, while here it was given by mistake, but the principle is the same; and the court held in that case that there could be no lien, notwithstand-

ing the bill of lading. The courts say, 'There was no cargo to which the ship could be bound, and there was no contract for the performance of which the ship could stand as security.' "

And again, in an opinion by Mr. Justice Davis in the case of The Keokuk, 9 Wall. 517–521, he reiterates:

"It is a principle of maritime law that the owner of the cargo has a lien on the vessel for any injury he may sustain by the fault of the vessel or the master; but the law creates no lien on the vessel, as a security for the performance of a contract to transport a cargo, until some lawful contract of affreightment is made, and the cargo to which it relates has been delivered to the custody of the master, or some one authorized to receive it. The Freeman v. Buckingham, 18 How. 188."

In an opinion by Mr. Justice Clifford in the case of The Delaware, 14 Wall. 579–606, the case of The Freeman v. Buckingham, 18 How. 182, is cited as an authority supporting the proposition that bills of lading, duly executed in the usual course of business, bind the owners of the vessel, if the goods were laden on board, or were actually delivered into the custody of the master; "but it is well-settled law that the owners are not liable if the party to whom the bill of lading was given had no goods, or the goods described in the bill of lading were never put on board, or delivered into the custody of the carrier or his agent."

These authorities are conclusive upon the point that the right to proceed in rem for breach of a contract of affreightment does not exist unless the cargo, or a portion of it, has been delivered to the master of the vessel, or to his authorized agent. The authorities also hold that ships engaged in carrying passengers on the high seas stand on the same footing of responsibility, according to the maritime laws, as those engaged in carrying merchandise. 1 Am. & Eng. Enc. Law (2d Ed.) pp. 661, 662. The weight of authority bears so strongly against the position of the libelants that I am unwilling to set up my judgment in opposition. According to the authorities, it is not the making of a contract, nor the payment of the consideration therefor, which renders the vessel liable. The lien upon which the right to proceed in rem depends does not attach until the goods or passenger have been placed within the care and under the control of the ship's master. In the argument of the exceptions it was insisted that, the contract being entire, both vessels became liable from the time libelants started on their journey from Seattle to St. Michaels; but the libel fails to allege that they ever rendered themselves, or placed their baggage, on board the steamer Bristol, or that performance of the contract on the part of the owner of the vessels was ever commenced. Exceptions sustained.