## THE BELLA.

### (District Court, D. Washington, N. D. January 3, 1899.)

1. MARITIME LIENS—BREACH OF CONTRACT OF CARRIAGE — RECIPROCAL RIGHT TO LIENS.

    The rights of the owners of a ship and cargo, with respect to liens, are reciprocal. The owner of a cargo has no lien on the ship for performance of the contract of carriage until the shipowner's lien upon the cargo for freight has attached. Nor is there any lien on the ship for the enforcement of a contract for the carriage of a passenger until he has rendered himself on board for the purpose of being carried as a passenger.

2. SAME—CONTRACT OF AFFREIGHTMENT WITH CHARTERER—LIEN ON VESSEL.

    Libelant contracted with a transportation company for the carriage of freight and passengers from Seattle to an Alaskan port, no vessel being specified. The company entered into a charter party with the claimants for the schooner Bella, but failed to comply with its terms to entitle it to possession, and never obtained possession, though it was permitted to build a new cabin on the vessel, and to place a purser on board, who made some arrangement for loading freight for libelant, but had not done so when the charter was abandoned by the charterer. Passengers of libelant's party had also visited the vessel, and selected berths, but had not gone on board for purposes of the voyage. Held, that libelant was not entitled to a lien on the vessel for the breach of the contract by the transportation company.

3. ADMIRALTY—SETTLEMENT OF CASE.

    An intervener in an admiralty suit in rem, who had obtained leave to prosecute his claim in forma pauperis, made a settlement with the claimants without paying costs or fees of his attorneys. Held, that the attorneys, not having taken steps to obtain a lien, were not entitled to continue the prosecution of the claim.

4. SAME—COSTS.

    It appearing that the claim was valid, the costs made by the intervention would be taxed to the claimants.

This was a suit in rem by the Missouri Alaska Gold Company, of Paris, Mo., against the schooner Bella (Meyer & Kyle, claimants), for damages for breach of a contract of affreightment.

Brady & Gay, for libelant and intervener.
Stratton & Powell, for claimants.

HANFORD, District Judge. By a contract in writing between libelant and the Seattle-Dawson City Transportation & Merchandise Company (which, for convenience, will be hereafter referred to as the "Transportation Company"), said Transportation Company agreed to carry a number of passengers and about 100 tons of freight, by a vessel not named, from Seattle to the mouth of the Yukon river, at

specified rates; and in pursuance of that contract the libelant paid a sum of money, estimated to be about one-half of the total amount to be paid for said transportation, and the party for whose transportation the libelant had undertaken to provide came to Seattle from the state of Missouri, made purchases of supplies and merchandise to take with them to St. Michaels, caused the same to be delivered at a warehouse for shipment on the Bella, and selected their sleeping berths, with the consent of the master and purser. The Transportation Company attempted to provide a vessel for the service which it had undertaken to perform, by chartering the schooner Bella. A charter party was executed by the owners, and a part of the money agreed to be paid as consideration for the charter was paid, and the charterer was permitted to construct upon the vessel a new cabin for the accommodation of the passengers; but, by the terms of the charter party, the owners were entitled to retain possession and control of the ship until they received a bond, satisfactory to their agent, to indemnify them against all liens which might attach to the vessel, and against all demands for freight or rental of the vessel, during the continuance of the charter. Said bond was never furnished, and the vessel was actually retained in the possession and control of the master of the ship, who was employed by the owners. The vessel, however, was laid in a berth at Seattle, ready to receive cargo; and while in that position she was taken into custody by the marshal, under process issued against her in a suit to collect a small balance of the expense incurred by the Transportation Company for the new cabin, above mentioned. The intervener, P. H. Levin, was engaged by the Transportation Company to go on the vessel as purser and freight clerk, and he was received on board in that capacity by the master, quarters were assigned to him, and he was permitted to act as purser and freight clerk from the 1st to the 26th day of May, 1898, and in that capacity he received on board of the vessel a quantity of merchandise which the Transportation Company had agreed to carry for a party not connected with the libelant, and he also received the freight belonging to the party represented by the libelant, and caused it to be moved by the crew of the vessel from the warehouse to a place on the dock, ready to be taken aboard. The vessel was then in custody of the marshal; and, before any of it was taken on board, the president and managing officer of the libelant forbade the loading of said freight on board, and it was afterwards returned to the warehouse. The Transportation Company, having entirely failed to furnish the bond and make the final payment provided for in the charter party, abandoned the voyage, and surrendered all claim to control of the vessel; and thereupon this suit in rem was commenced to recover the amount paid for transportation of passengers and freight by the libelant to the Transportation Company under the written contract between the two corporations, and to recover damages for breach of said contract by the Transportation Company.

Levin filed an intervening libel for the amount of his wages during the time he was engaged as purser and freight clerk, and, by an order of court, he was permitted to prosecute his suit as an intervener in forma pauperis. After his libel had been answered by the claimants,

he made an assignment in writing of his claim against the Transportation Company, and of his interest in the suit, to one B. A. Cornell, who afterwards made a further assignment thereof to the claimants, for the sum of $50. This was done without the knowledge of the proctors for said intervener, and without the payment of fees which had been earned by the officers of the court. Notwithstanding said assignment, the proctors now claim the right to further prosecute the suit in behalf of said intervener, in order to recover costs and compensation for their services.

It is clear that the libelant has no claim against the Bella, nor against her owners, by virtue of any contract made with them, or any agent authorized to represent them, or with the master. The charterer could not bind the schooner by any contract, without satisfying the conditions of the charter party essential to acquire the right to have possession of the vessel and to control her employment. Having failed to comply with the conditions, the Transportation Company did not become owner of the vessel for the voyage, nor a representative of the owner. Although the Transportation Company was permitted to have a new cabin constructed on the vessel, which was necessary to equip her for the intended voyage, its possession and control of the ship were not so complete that representatives of the libelant were deceived by being led to believe that it had authority to make a contract creating a lien upon the vessel. The contract upon which the suit is founded makes no reference to the schooner Bella, and no lien for freight or passage money ever attached to the goods or baggage of the people represented by the libelant. Neither the owner nor charterer could lawfully assert a claim to such a lien by reason of the handling of their goods, without their consent, while the vessel was in the marshal's custody. As between the respective owners of a ship and cargo, their rights are reciprocal. The right to a lien for freight gives a right to a lien upon the ship for due performance of the contract for safe carriage and delivery, and no such lien upon the ship attaches until the lien for freight has attached upon the cargo. I hold, also, that until a passenger has rendered himself on board, for the purpose of being carried as a passenger, performance of the contract has not been commenced, so as to subject the vessel to a lien. The Eugene, 83 Fed. 222; Id., 31 C. C. A. 345, 87 Fed. 1001. Merely going on board to inspect the vessel, or to select and reserve a sleeping berth, is not any part of a journey, nor the beginning of the relation of carrier and passenger.

By the uncontradicted evidence, it appears that the intervener, Levin, was received and recognized by the master of the Bella as purser and freight clerk, and he remained on board in that capacity 26 days. His services were of no value to the ship, but his time was reasonably worth to him $100 per month, and I must conclude that he did have a valid claim against the ship and the master for his wages at that rate for 26 days. I do not consider that it is a commendable practice to settle a litigated claim without the knowledge of the attorneys whose appearance for the party appears of record. Nevertheless, attorneys who have not taken the steps necessary to acquire a lien upon the money due to their client cannot assert any right in their own

behalf against an adverse party who does effect a settlement in that manner. Permission to prosecute this suit in forma pauperis, in behalf of the intervener, would not have been granted if the court had been informed that the attorneys claimed any interest in the suit or a right to share in the proceeds of a recovery. Boyle v. Railway Co., 63 Fed. 539. The clerk and marshal, however, are entitled to be protected in their right to collect all the fees they have earned for services at the instance of the intervener as well as the claimants. The parties had no right to settle the case without providing for the costs already accrued. For this reason the claimants will be taxed with all costs of intervention, including the same proctors' fees which would be taxable if the intervener had recovered a sum less than $50 after a final hearing. The libelant's suit will be dismissed, with costs.