### THE ENERGIA.

(District Court, N. D. Washington. August 13, 1903.)

No. 1,720.

1. MARITIME LIENS—BREACH OF EXECUTORY CHARTER—WASHINGTON STATUTE.
    While by the general maritime law there is no lien on a ship for breach of a charter party which is wholly executory, yet under the statute of Washington (Ballinger's Ann. Codes & St. §§ 5953, 5954), which provides that all vessels shall be liable for nonperformance of any contract for the transportation of persons or property between places within the state, or to or from places within the state, a charterer of a vessel to carry a cargo from a Washington port has a lien thereon for her failure or refusal to load such cargo, which may be enforced by a suit in rem in a court of admiralty.

2. SAME—VALIDITY OF STATE STATUTES—FOREIGN VESSELS.
    Ballinger's Ann. Codes & St. Wash. §§ 5953, 5954, in so far as they give a lien on all vessels for nonperformance of a charter to carry cargoes to or from ports of the state, are reasonable and just provisions to secure the performance of maritime contracts, which a court of admiralty may properly recognize and enforce against both foreign and

---

¶ 1. Maritime liens created by state laws, see note to The Electron, 21 C. C. A. 21.

domestic vessels, or vessels engaged in either domestic or interstate or foreign commerce, in the absence of legislation by Congress on the subject.

8. SAME.

The owners of vessels, in making contracts for their employment, must be presumed to depend to some extent for their protection on the local laws of the countries or states to which they are sent, and also to subject themselves to such laws, where they do not discriminate to the prejudice of foreign ships.

In Admiralty.

Suit in rem against the steamship Energia, to recover damages for breach of an executory contract, entered into at San Francisco, by which the steamship was chartered to libelant by her owners to carry a cargo of lumber from Puget Sound to Australia. Heard on exceptions, alleging that the facts set forth in the libel are insufficient to entitle the libelant to a lien upon the steamship upon which to maintain a suit in rem. Exceptions overruled.

Struve, Hughes & McMicken, for libelant.
Gorham, Brown & Gorham, for claimants.

HANFORD, District Judge. The libel sets forth that a charter party was executed at San Francisco by the owners of the steamship Energia in favor of the libelant, which is a California corporation, whereby said steamship was chartered to take a cargo of lumber from one or more ports on Puget Sound, to be designated by the libelant, and to be delivered at a port of Australia, to be designated; that the steamship came to Puget Sound pursuant to the charter party; that the charterer was able, ready, and willing to furnish a cargo as provided in the contract, but the owners and master of the steamship broke the contract by refusing to accept the cargo, and thereby caused a loss to the libelant of $15,000. The claimants dispute the right of the libelant to maintain a suit in rem, on the ground that, as they say, the vessel did not become subject to a lien for the performance of the contract.

By the general maritime law there is no lien in favor of either the shipowner or the shipper for the breach of a contract wholly executory. Such lien does not attach until the cargo, or a part thereof, has been loaded upon the ship, or delivered into the custody of the master, or some other person who is rightfully acting as the agent of the owner. 7 Am. & Eng. Encyc. L. (2d Ed.) 279; The Schooner Freeman v. Buckingham, 18 How. 182, 15 L. Ed. 341; Vandewater v. Mills, 19 How. 82, 15 L. Ed. 554; King v. The Lady Franklin, 8 Wall. 325, 19 L. Ed. 455; The Keokuk v. Robson, 9 Wall. 517, 19 L. Ed. 744; The Eugene (D. C.) 83 Fed. 222; Id., 87 Fed. 1001, 31 C. C. A. 345; The Bella (D. C.) 91 Fed. 540; The S. L. Watson, 118 Fed. 945, 55 C. C. A. 439.

As the libelant has no lien under the general maritime law, this suit cannot be maintained, unless the lien statute of this state may be applied. The libelant insists, however, that the contract is maritime in its nature, and cognizable in admiralty, and that the court has jurisdiction to enforce a lien given by a statute enacted by the Legislature of Washington territory, and continued in force as a law of this state. This proposition did not receive attention in the case of

The Eugene, supra, nor in other cases more recently decided by this court. The statute which is now invoked is contained in sections 5953 and 5954 of Ballinger's Ann. Codes & St. Wash., and provides that:

"Section 5953. All steamers, vessels, and boats, their tackle, apparel and furniture, are liable,— * * * (5) For non-performance or mal-performance of any contract for the transportation of persons or property between places within this state, or to or from places within this state, made by their respective owners, masters, agents, or consignees. * * *

"Demands for these several causes constitute liens upon all steamers, vessels, and boats, and their tackle, apparel, and furniture, and have priority in their order herein enumerated, and have preference over all other demands; but such liens only continue in force for the period of three years from the time the cause of action accrued.

"Section 5954. Such liens may be enforced, in all cases of maritime contracts or services, by a suit in admiralty, in rem, and the law regulating proceedings in admiralty shall govern in all such suits; and in all cases of contracts or service not maritime by a civil action in any district court of this territory."

The allegations of the libel make a case within the law of this state, for nonperformance of a contract for the transportation of property from a place within this state, made by the owners of the vessel, is charged. This statute cannot be fairly construed so as to exclude executory contracts, because a lien is given for nonperformance of any contract for transportation of persons or property as well as for malperformance, and a total failure to perform such a contract by refusing to receive a cargo which the carrier has agreed to receive, at the place designated in the contract, certainly constitutes nonperformance. For the true interpretation of section 5954 it is necessary to have in mind that the statute was originally enacted by the Legislature of Washington territory; that the district courts of the territory had jurisdiction of admiralty and maritime causes (see The City of Panama v. Phelps, 101 U. S. 453, 25 L. Ed. 1061); that the practice and forms of procedure of those courts in admiralty suits conformed to the practice and forms of procedure in admiralty causes of United States District Courts, and that in other civil actions the procedure was as prescribed by statutes enacted by the Legislature. Section 5954 has reference to those differences in practice and modes of procedure, and was not intended to prescribe a rule of interpretation which would nullify in part the preceding section by restricting the right to sue in rem to such cases only as by the general maritime law are cognizable by suits in rem. Section 5953 gives a lien for nonperformance of any contract for the carriage on a vessel of passengers or property, and the plain intent of section 5954 is to provide that such liens shall be enforceable by suits in rem. The facts alleged are similar in all essential particulars to the facts in the case of The J. F. Warner (D. C.) 22 Fed. 342, in which case the court enforced a lien given by a statute of Michigan for nonperformance of an executory contract made in New York for the carriage of a cargo from a port of Michigan to Buffalo.

In the argument in behalf of the claimants it is urged that the libel does not allege that the Energia is a domestic vessel, and that in fact she is a foreign vessel, and according to the recent decision of

the Supreme Court in the case of The Roanoke, 189 U. S. 185, 23 Sup. Ct. 491, 47 L. Ed. 770, liens given by state laws do not attach to foreign ships. That was a suit in rem to recover compensation for work and labor performed in this state by subcontractors in making repairs and alterations upon the steamship Roanoke, a vessel owned by an Illinois corporation. By the opinion it appears that the Supreme Court gave particular consideration to the fact that—

"Neither the owner nor master nor other officers of the vessel had given an order for the material and labor set forth in the libel, which were furnished upon the order of a contractor, who, before the filing of the libel, and without any knowledge by the owner of these unpaid claims, had been paid in full for these claims."

And the court said:

"The injustice of permitting such claims to be set up is plainly apparent. * * * The statute of Washington, however, provides for an absolute lien upon the ship for work done or material furnished at the request of the contractor or subcontractor, and makes no provision for the protection of the owner in case the contractor has been paid in full the amount of his bill before notice of the claim of the subcontractor is received. The finding in this case is that the contractor, who had agreed, in consonance with the usual course of business, to make the repairs upon the vessel, had been paid in full by the claimant. The injustice of holding the ship under the circumstances is plainly manifest."

The concluding part of the opinion is as follows:

"Bearing in mind that exclusive jurisdiction of all admiralty and maritime cases is vested by the Constitution in the federal courts, which are thereby made judges of the scope of such jurisdiction, subject, of course, to congressional legislation, the statute of the state of Washington, in so far as it attempts to control the administration of the maritime law by creating and superadding conditions for the benefit of a particular class of creditors, and thereby depriving the owners of vessels of defenses to which they would otherwise have been entitled, is an unlawful interference with that jurisdiction, and to that extent is unconstitutional and void."

The decision, as I understand it, is an assertion of the independence of the national courts in the exercise of the admiralty jurisdiction conferred by the Constitution, and of their authority to refuse to give effect to unreasonable state laws in cases where the application of such laws will work an injustice. The opinion plainly indicates an intention to not lay down any dogmatic rule denying the power of state legislatures to create liens to secure the just performance of maritime contracts which may be enforced against foreign vessels by courts having admiralty and maritime jurisdiction. With respect to the question whether liens created by state statutes may, in any case, attach to foreign vessels, the opinion contains only a suggestion that "the right to extend these liens to foreign vessels in any case is open to grave doubt." This leaves the question undetermined by the Supreme Court. Therefore other courts are left free to decide according to their own sense of right in each particular case.

In the opinion of this court in the case of The Robert Dollar (D. C.) 115 Fed. 218, I pointed out that the Supreme Court has in numerous instances upheld statutes enacted by state legislatures creating liens incidental to maritime contracts, not limited in their ap-

plication to vessels employed only in local traffic upon waters wholly within the boundaries of a single state; and other statutes imposing burdens upon foreign vessels, although conceded to be statutes prescribing regulations of interstate and foreign commerce; and other statutes subjecting imported merchandise within a state, but owned by nonresidents, to liens and judicial process, for the protection of creditors, which statutes would necessarily have been condemned as unconstitutional if it were true that the subjects and carriers of interstate and foreign commerce were held to be, like the property and agencies of the national government, exempt from the exactions and burdens of state statutes, or if the grant to Congress of specified powers is exclusive, and effective to nullify every state law which trenches upon the domain of congressional power. The Lottawanna, 21 Wall. 558, 22 L. Ed. 654; The J. E. Rumbell, 148 U. S. 1, 13 Sup. Ct. 498, 37 L. Ed. 345; The Glide, 167 U. S. 606, 17 Sup. Ct. 930, 42 L. Ed. 296; Cooley v. Board of Wardens, 12 How. 299, 13 L. Ed. 996; Green v. Van Buskirk, 7 Wall. 139, 19 L. Ed. 109; Walworth v. Harris, 129 U. S. 355, 9 Sup. Ct. 340, 32 L. Ed. 712; Ex parte McNiel, 13 Wall. 236, 20 L. Ed. 624; The China v. Walsh, 7 Wall. 53, 19 L. Ed. 67; Homer Ramsdell Transp. Co. v. Compagnie Générale Transatlantique, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155; Huus v. Steamship Co., 182 U. S. 392, 21 Sup. Ct. 827, 45 L. Ed. 1146; The Corsair, 145 U. S. 335, 12 Sup. Ct. 949, 36 L. Ed. 727.

Mr. Justice Story, in the case of The Chusan, Fed. Cas. No. 2,717, took an advanced position, which the Supreme Court has not sustained otherwise than by referring to it with commendation, as was done in the opinion of the court written by Mr. Justice Brown in the Roanoke Case. In the Chusan Case the Circuit Court for the District of Massachusetts held a statute of the state of New York, limiting the right to enforce a maritime lien, to be unconstitutional. The opinion was written by Mr. Justice Story, and therein he stoutly maintained that the power of Congress to regulate interstate and foreign commerce is exclusive, and he denied the proposition that state laws prescribing regulations affecting interstate and foreign commerce are valid until superseded by an act of Congress relating to the same subject. If his opinion on this subject prevailed, there would be no doubt of the unconstitutionality of all state statutes creating liens upon vessels employed in carrying on interstate and foreign commerce. But the decisions of the Supreme Court have established a different rule. At a very early period in the history of the jurisprudence of this country Chief Justice Marshall concisely stated the principle which has since controlled the decisions of the Supreme Court on this subject, as follows: "It is not the mere existence of the power, but its exercise, which is incompatible with the exercise of the same power by the states." Sturges v. Crowninshield, 4 Wheat. 196, 4 L. Ed. 548. This is the identical proposition which was controverted by Mr. Justice Story in the Chusan Case, and the same proposition was expressly affirmed by the Supreme Court, in an opinion written by Mr. Justice Curtis, in the case of Cooley v. Board of Wardens, supra. The Supreme Court has in a number of later cases steadfastly adhered to the rule supported by these deci-

sions rendered by Marshall and by Curtis, and quite recently Mr. Justice Brown, in the case of Huus v. Steamship Co., supra, said:

"Conceding it to be within the power of Congress to assume control of and regulate the whole system of pilotage, as applied to vessels engaged in foreign or interstate commerce, it has, for obvious reasons, left to the several states the power to legislate upon this subject, and to prescribe rules for the licensing and government of pilots, the collection of their fees, and such other incidental matters as the nature of their services in the particular localities may require. The power to do this was recognized by this court in Cooley v. Board of Wardens, 12 How. 299 [13 L. Ed. 996], though it was subsequently said to be subject to such restrictions as Congress might see fit to impose. Spraigue v. Thompson, 118 U. S. 90 [6 Sup. Ct. 988, 30 L. Ed. 115]."

And, after quoting portions of sections 4235, 4237, 4401, and 4444, Rev. St. [U. S. Comp. St. 1901, pp. 2903, 3016, 3037], the learned justice makes the following observation:

"The general object of these provisions seems to be to license pilots upon steam vessels engaged in the coastwise or interior commerce of the country, and at the same time to leave to the states the regulation of pilots upon all vessels engaged in foreign commerce."

The Supreme Court has not yet marked the boundary limiting the power of state legislatures to enact laws relating to subjects over which Congress has supreme authority to legislate, but they do recognize the right and authority of the states to legislate for the protection of creditors, and to provide security for the enforcement of commercial contracts so long as Congress postpones the enactment of national laws covering those subjects.

In this case the facts alleged in the libel afford no basis for a refusal to give effect to the state lien law by assuming that an injustice would be done, and in that respect the case differs from the Roanoke Case; for, until the allegations of the libel shall be answered, the respondents will appear before the court as willful violators of a valid contract, and the libelant will appear to have suffered a pecuniary loss in consequence of their default. It is my opinion, also, that there is a good answer to the suggestion that the contract sued upon was not entered into within this state. Ships are built to be wanderers, and in making contracts for their employment the owners must be presumed to depend to a certain extent for their protection upon the laws and customs of the different states and countries to which they are sent; and, on the other hand, the rule which requires travelers and sojourners to observe and obey the laws and customs of the countries and states which they visit for their own profit or pleasure may be applied to visiting ships without affording any ground for the owners to complain of ill usage. This is especially true with respect to laws intended to insure performance of commercial contracts which do not discriminate to the prejudice of foreign ships. In the case of The Merrimac, 14 Wall. 203, 20 L. Ed. 873, the Supreme Court expressly decided that:

"Port regulations are supposed to be known to the shipowner before he sends his vessel on the voyage, and the general rule is that in sending her to any particular port he elects to submit to lawful regulations established at that port. * * *"

848                    124 FEDERAL REPORTER.

If the local regulations of a particular port are supposed to be known to the owners of ships in all parts of the world, knowledge of the general laws ·of a state prescribing regulations of commerce for all the ports of that state should also be presumed, and a contract of affreightment, although made elsewhere, should be presumed to have been made in contemplation of the laws of the state in which the cargo is to be obtained.

The case of The J. F. Warner, supra, appears to me to be a sound decision, and for the reasons given by Mr. Justice Brown for his decision in that case I overrule the exceptions.