these calls the land can, without difficulty, be located. No other objections to this grant are stated in the opinion of the board, nor are any others raised on the part of the United States, the case having been submitted without argument or suggestion on the part of the appellees. A decree of confirmation must therefore be entered.

PACHECO (UNITED STATES v.). See Cases Nos. 15,980–15,982.

## Case No. 10,642.

### The PACIFIC.

### District Court, S. D. Florida. 1857.

SALVAGE—AMOUNT—DAMAGE TO GOODS—LEAK IN SALVING VESSEL.

[1. Cited in The Mulhouse, Case No. 9,910, to the point that the owner of a vessel employed in the business of wrecking is liable for damages happening to goods taken on board from a wreck, caused by the leaky condition of his vessel.]

[2. Cited in Baker v. The Slobodna, 35 Fed. 542, as an instance in which 30 per cent. was allowed as salvage for cargo saved to the value of $29,776.]

[Nowhere reported; opinion not now accessible.]

## Case No. 10,643.

### The PACIFIC.

[1 Blatchf. 569;[1] 8 N. Y. Leg. Obs. 340; 36 Hunt, Mer. Mag. 575.]

### Circuit Court, S. D. New York. Oct. Term, 1850.

ADMIRALTY JURISDICTION — SHIPS CARRYING PASSENGERS—CONTRACT AS AN ENTIRETY.

1. Ships engaged in carrying passengers on the high seas for hire, stand on the same footing of responsibility, according to the maritime law, as those engaged in carrying merchandize, the passage money being the equivalent for the freight; and, therefore, on a breach of a passenger contract, and damage resulting, the ship as well as the owner is bound to respond. The case of The Aberfoyle [Case No. 17] cited, and its doctrine confirmed.

[Cited in A. M. Bliss, Case No. 274.]

2. The owner of a ship bound from New-York to California, agreed with C., at New-York, to take him as a cabin passenger, with his luggage, at $300; not more than 50 cabin passengers to be received, for which reason the fare was raised from $250, the usual charge; state-rooms to be fitted up between decks on each side, with a free passage between, disencumbered with freight, for ventilation and exercise; and the vessel to sail on the 5th of January. C. paid his passage money on the 2d. He lived in Massachusetts, and prepared for the voyage at considerable expense, and went to New-York at the time appointed for sailing, when he found that the state-rooms had no space between them for ventilation or exercise, in consequence of the increased number of them, and that 72 cabin passengers had been engaged, many at $275 each, so that the vessel was overcrowded with passengers and cargo, and incommodious, and dangerous to health. C. refused to embark, and demanded back his passage money, which was refused. He then, on the 20th of January, filed a libel in rem against the ship, for the return of the passage money and for his damages: *Held*, that the admiralty had jurisdiction of the case, and that the ship was liable.

3. The contract was an entirety. It is wholly of admiralty cognizance, or else it is not at all within it, as there cannot be a divided jurisdiction.

4. The stipulations in the contract, as to the fitting up of the ship, &c., were incidental and subsidiary to the main purpose of the contract, which was to convey the libellant and his luggage to California. Those stipulations have nothing to do with determining the nature of the contract, or with the question of jurisdiction.

5. As the contract was an entirety, the failure to comply with any part of it went to the whole. The libellant had a right to demand a strict compliance with every part, and, in case of refusal, to consider the contract as broken.

[Cited in Cobb v. Howard, Case No. 2,925.]

6. In the case of a contract maritime in its nature and subject, it is not essential, in order to give jurisdiction to the admiralty in rem, that the vessel should have entered on the performance, or that the breach should have occurred in the course of the voyage.

[Cited, but not followed, in The General Sheridan, Case No. 5,319. Cited in Oakes v. Richardson, Id. 10,390; The City of Brussels, Id. 2,745; The Williams, Id. 17,710; Scott v. The Ira Chaffee, 2 Fed. 403. Cited, but not followed, in The Monte A., 12 Fed. 333. Distinguished in The City of Baton Rouge, 19 Fed. 462.]

7. A maritime contract depends upon its subject matter, and, when entered into for the conveyance of goods or persons in a particular ship, it binds the ship. Her obligation results directly from the contract, and not from the performance, and the liability of the owner and that of the ship attach at the same time.

[Cited in Cobb v. Howard, Case No. 2,925. Cited, but not followed, in The General Sheridan, Id. 5,319. Cited in The Williams, Id. 17,710.]

8. In the case of a contract with a material-man, or one for repairs, the liability of the vessel arises from the furnishing of the supplies, or the making of the repairs. Short of actual repairs or supplies, the party claiming damages for a breach of contract must look to the master or owner.

[Cited in The Cabarga, Case No. 2,276; The California, Id. 2,312; James Dalzell's Son & Co. v. The Daniel Kaine, 31 Fed. 748; The James H. Prentice, 36 Fed. 781.]

[Appeal from the district court of the United States for the Southern district of New York.]

Charles D. Cleaveland filed a libel in rem, in the district court, against the ship Pacific [her tackle, etc.][2] then lying in the port of New-York [and against the owners and master],[2] for a breach of a passenger contract. The libel set forth, that the vessel was bound on a voyage from New-York, around Cape Horn, to San Francisco in California; that her owners agreed with the libellant, at New-York, to take him, as a cabin passenger, together with his luggage, the

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

[2] [From 8 N. Y. Leg. Obs. 341.]