LEARY et al. v. TALBOT et al.

(Circuit Court of Appeals, Second Circuit. April 14, 1908.)

No. 191.

SHIPPING—DEMURRAGE—LIABILITY OF CHARTERER FOR DELAY IN DISCHARGING.

The owners of a schooner *held* entitled to recover demurrage from a charterer for delay in discharging a cargo of lumber in New York under a charter providing for customary dispatch where the vessel was required by the charterer to discharge portions of the cargo at different docks, and the delay resulted from her detention at the first for a longer time than was anticipated through no fault of the vessel, which threw her behind in reaching the others, and in consequence the berths reserved for her there were occupied and she was obliged to wait, the charterer being bound by the custom of the port to furnish her berths when ready.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 576.

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

For opinion below, see 151 Fed. 355.

Hagen, Goodrich & Coughlan and H. W. Goodrich, for appellants.

Armstrong, Brown & Boland and P. M. Brown, for appellees.

Before Judges LACOMBE, WARD, and NOYES.

WARD, Circuit Judge. This libel is filed by the owners of the schooner Persis A. Colwell to recover 21 days' demurrage at the port

of discharge. The charter party provided as to lay days and demurrage:

"Customary dispatch at port of discharge where vessel can safely get and discharge. And that for each and every day's detention by default of said party of the second part (the charterers) or agent ($44.00) forty-four dollars per day, shall be paid by said party of the second part, or agent, to the said party of the first part, or agent. The cargo or cargoes to be received, and delivered alongside, within reach of the vessel's tackles."

Though the vessel does the loading and discharging, this provision for lay days is an engagement of the charterers that they will take the cargo within that time, and the provision for demurrage is an engagement that thereafter they will pay at the rate of $44 per day for every day of detention due to them. The purpose of lay days is to fix the period during which the charterer may detain the vessel in discharging for the agreed freight and beyond which he must pay her an extended freight in the form of demurrage, or of damages in the nature of demurrage. Carver, at section 608 of his work on Carriage of Goods by Sea, states the law thus:

"The work of putting the goods into the ship and of taking them out again, whether under a charter party, or in a general ship, is in nearly all cases done by the servants of the shipowner. But the duty of bringing the goods to be shipped, and of receiving them at the port of discharge, lies upon the freighter. And in these matters defaults are apt to occur which lead to detention of the ship, and consequent loss to the shipowner. It is, therefore, usual in charter parties, and sometimes in bills of lading, to fix times within which the ship is to be loaded and discharged; and, where that is done, the provision is understood as an undertaking by the freighter that the ship shall be loaded or discharged within the time so fixed. The shipowner must not be in default; he must by his servants do his part of the work of receiving and stowing, or unloading, with diligence and with the proper number of men; but the undertaking as to the time which the loading or discharge shall occupy is given by the freighter, not by the shipowner. This is commonly marked in the charter party by saying that so many days 'are to be allowed the said merchant for loading, etc.' But the effect is the same whether the clause is in that form, or states, generally, that the cargo 'shall be loaded' in so many days. The promise is made by the freighter, for the benefit of the shipowner. Exceptional cases, however, occur. A charter party provided that the cargo should be 'received from alongside ship at port of discharge as customary as fast as steamer can deliver in ordinary working hours. * * * Not less than 100 standards a day loading or discharging, and ten days on demurrage over and above the said laying days at £70 per day.' The Court of Appeals, affirming Wills, J., held that the stipulation as to 100 standards a day was for the protection of the charterers; and did not amount to an undertaking by them that the ship should be discharged at that rate."

It is stipulated in this case that the vessel carried 411,040 feet of lumber, and that the customary discharge at the port of New York for such a vessel is 25,000 feet per day, making 16½ lay days. After these lay days had expired the charterers were bound to pay demurrage for every day of detention in discharging the cargo which was in any way due to them.

The charterers having sold the cargo to four different persons had, in accordance with a rule of the Maritime Exchange of this port which was received in evidence, one full calendar day after the vessel had reported in which to furnish her a berth, and were bound to furnish her a berth where she could discharge each subsequent consignment

after receiving 24 hours' notice from the master that he would be ready to discharge it at the expiration of that time. The vessel reported on October 17th at 11 a. m., and, under the rule, the charterers were entitled to one full calendar day in which to furnish a berth, which would have given them until the morning of October 19th, a calendar day extending from midnight to midnight. Chapter 677, Laws of New York, § 27. In point of fact the discharge began on the morning of October 18th, so that lay days should be calculated from that time, and omitting Sundays, because the lay days contemplated are evidently working days, the 16½ days expired November 7th at noon. Thereafter the discharge continued at two subsequent berths designated by the charterers until November 25th at 5:30 p. m., during which time every working day seems to have been used except 7, on which the designated berth was occupied by other vessels.

Respondents claim that this detention resulted from delay of half a day in discharging the vessel at the first berth, on account of rain, which disarranged the schedule they had provided for the subsequent berths, so that other vessels got into them. We do not think the schooner had anything to do with this schedule. The charterers were bound to furnish berths, and were responsible for any delay caused by their not doing so. If the vessel was at fault for any delay during the lay days the legal consequence would be simply to extend the lay days pro tanto, and not to make her liable for the disarrangement of the charterers' schedule, but the delay in question was due to the refusal of the custom house inspector to work in the rain and not to the fault of the vessel at all, so that the half day must be included in the lay days.

All the subsequent detention except Sundays was due to the charterers, so that as demurrage began to run on the afternoon of November 6th, and parts of demurrage days are treated as whole days, the libelants were entitled to recover for 18 days, but, as they have not appealed, the decree of the District Court giving them 15½ days is affirmed, with interest and costs.