HARRINGTON v. AMERICAN TIE & LUMBER CO.

(Circuit Court of Appeals, Second Circuit.   February 14, 1911.)

No. 198.

SHIPPING (§ 175*)—DEMURRAGE—LIABILITY OF CHARTERER.

A charter party required the charterer to pay demurrage for each and every day's detention by his default, and provided: "Charterers' stevedore to be employed in loading and discharging at not to exceed current rates." It was the master's duty to load the vessel. The charterer designated a stevedore at the port of loading; but on arrival there, by reason of a strike, he declined to load, and the charterers' agent notified the master that he waived the privilege of naming the stevedore. *Held*, that it was only a privilege, which imposed no duty on the charterer to furnish a stevedore, and he could not be charged with demurrage because of his failure to do so, where the cargo was ready.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 572–574;  Dec. Dig. § 175.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657;  Randall v. Sprague, 21 C. C. A. 337;  Hagerman v. Norton, 46 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by J. R. Harrington against the American Tie & Lumber Company. Decree for libelant, and respondent appeals. Reversed.

In October, 1909, the respondent chartered from the libelant as master the schooner Gracie D. Buchanan for carrying railroad ties from Jacksonville, Fla., and other Southern points, to certain Northern points. The charter party contained, among others, the following provisions: "And that for each and every day's detention by default of said party of the second part (the respondent) or agent, $100 per day, day by day, shall be paid by said party of the second part, or agent, to the said party of the first part, or agent. * * * Charterer's stevedore to be employed in loading and discharging at not to exceed current rates."

The charter party was signed at New York and the vessel went to Jacksonville for her cargo. Before leaving New York the libelant was informed by the respondent's officers that one Mason, a stevedore at Jacksonville, would load the vessel. The vessel arrived at Jacksonville, and the libelant reported to Mason on November 11, 1909. There was at the time a strike at Jacksonville, and Mason was unable to load the ship. On November 19th a supplemental agreement was entered into wherein the respondent agreed to pay the cost of loading, which was to be done in the name of the master. It was stipulated, however, that this agreement should not affect the rights of the parties under the charter party. On November 22d, the vessel began to load, and finished on November 27th.

The District Court awarded damages to the libelant upon the theory that the vessel should have completed loading on November 19th, and was entitled to demurrage for the time between that date and November 27th.

---

Colby & Goldbeck (W. F. Goldbeck and Edward D. Brown, of counsel), for appellant.

E. L. Owen, for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). The respondent was bound to pay demurrage only on account of delay caused by its default. And as the cargo was ready any possible default must have had its basis in the clause in the charter party: "Charterer's stevedore to be employed in loading." In our opinion, however, this provision did not impose upon the charterer any obligation either to furnish a stevedore or to load the vessel. It merely gave the charterer a privilege or option which it might or might not exercise. If it did not exercise it, the master was bound to do the loading. Anglo-African Co. v. Lamzed, L. R. 1 C. P. 229.

It follows, then, that if the respondent had not designated a stevedore, there would have been no ground for claiming that it was in default. But the respondent did designate a stevedore who was unable to do the work. Did this put the respondent in default? We think not. In our view the respondent, by designating Mason, did not guarantee that he would do the loading or that he could get men for the purpose. It was undoubtedly the duty of the libelant to employ Mason if he could and would do the work; but, when Mason was unable to attend to it, the libelant was then bound to have the work otherwise done. It was the duty of the master to load the ship. It is true that he was required to employ the person named by the charterer if he were available. If he were not available, the master was not justified in claiming that the respondent was in default and in doing nothing. Even if the fact that the respondent attempted to avail itself of its privilege of naming the stevedore justified the libelant, after the person designated declined to act, in awaiting further action upon the part of the respondent, we think it does not help the libelant here. The weight of the testimony is that the respondent's agent told the libelant, very soon after his arrival at Jacksonville, that the respondent waived its privilege. Clearly the respondent had the right to do this. By seeking to avail itself of its privilege, it did not irrevocably commit itself in the matter.

The decree of the District Court is reversed, with costs, and the cause is remanded, with instructions to dismiss the libel, with costs.