BROOKS et al. v. HILTON–DODGE LUMBER CO. et al.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 93.

1. SHIPPING �köim174—DEMURRAGE—LIABILITY OF PURCHASER OF CARGO.

The purchaser of a cargo of lumber from the charterer to be delivered at its wharf, which agreed to supply "suitable berth on arrival for receipt of the lumber in accordance with rules of port," was bound, not only to furnish suitable berth for receipt of the lumber, but also to do nothing to prevent its receipt from the vessel in accordance with the rules of the Maritime Exchange, and is liable to the charterer for demurrage it was required to pay because of delay caused by the purchaser.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 571; Dec. Dig. ⊱174.]

2. SHIPPING ⊱180—CHARTERS—LIABILITY FOR DEMURRAGE.

In the absence of an agreement to the contrary, it is the duty of the vessel to load and discharge cargo, and such duty should not be transferred to the charterer, unless the intention of the parties to do so is clear. The vessel is not relieved from such duty by a provision of the charter party that the stevedore for discharging shall be subject to approval of the charterer, and a stevedore employed with such approval is still the agent of the vessel, for whose delay in discharging the charterer is not liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 587, 588; Dec. Dig. ⊱180.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Joseph W. Brooks and others, owners of the schooner Grace Seymour, against the Hilton-Dodge Lumber Company and the Yellow Pine Company, impleaded. From the decree, the Yellow Pine Company appeals. Modified and affirmed.

For opinion below, see 221 Fed. 265.

Hyland & Zabriskie, of New York City (N. Zabriskie, of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (T. C. Jones, of New York City, of counsel), for appellee Hilton-Dodge Lumber Co.

Alexander & Ash, of New York City, for appellees Brooks and others.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a libel by the owners of the schooner Grace Seymour against the Hilton-Dodge Lumber Company, the charterer, to recover demurrage for 10½ days at $49 a day. The charterer, which had sold the cargo to the Yellow Pine Company f. o. b. its wharf, brought it in under the fifty-ninth rule in admiralty (29 Sup. Ct. xlvi).

The charter party provided that the cargo should be discharged as per rules of the Maritime Exchange, rule V of which fixes the lay days for discharging such a cargo as this at the rate of 35,000 feet per day, Sundays and legal holidays excepted. The total cargo divided by this amount gave the charterers 13½ lay days. The charter party also provided that for every day's detention thereafter by the default of the charterer or agent it was to pay $49.

[1] The Yellow Pine Company purchased the cargo of the Hilton-Dodge Company delivered on its wharf, and had nothing to do with either the charter party or the bill of lading. In the contract of sale, however, with the Hilton-Dodge Company, it agreed to supply "suitable berth on arrival for receipt of the lumber in accordance with maritime rules of port." We think it thereby undertook, not merely to furnish a suitable berth for receipt of the lumber, but also to do nothing to prevent its receipt from the vessel in accordance with the rules of the Maritime Exchange. The demurrage rate by rule VII was 15 cents per 1,000 feet of entire cargo delivered, or something over $70 a day. For any detention in receiving cargo caused by the Yellow Pine Company, the Hilton-Dodge Company would be liable as charterers to the vessel owners. Therefore the Yellow Pine Company must indemnify the Hilton-Dodge Company for whatever it is liable to pay the vessel for demurrage.

The common expression that so many days are allowed for loading and discharging a vessel is misleading. There is no obligation on the vessel to load or discharge within any fixed time. The duty is that of the charterers to furnish and to receive the cargo, if the vessel be able to load and discharge it within a fixed period, viz., the lay days. For any delay caused by the vessel the lay days would be pro tanto extended, and any delays due to the charterer would of course be included in the lay days.

The arrival of the vessel off Stapleton, Staten Island, was reported on Friday, November 29th, and the charterer had under rule IV of the Exchange from midnight of that day to midnight of the 30th to furnish a berth in which the vessel could discharge (Leary v. Talbot, 160 Fed. 914, 88 C. C. A. 96), and December 1st being a Sunday, the lay days began December 2d and if not interrupted by the vessel would end on December 17th at noon. The account is as follows:

| | Detention. | | | Detention. |
|---|---|---|---|---|
| December 2 | | No men f. 513 | | 1 |
| | | No room f. 170 | | |
| 3 | | Rigging | | ¼ |
| 4 | | | | |
| 5 | | | | |
| 6 | ½ | | | |
| 7 | 1 | | | |
| 9 | 1 | | | |
| 10 | ½ | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | 1 | | | |
| 14 | 1 | | | |
| 16 | | Rigging | | ½ |
| 17 | | | | |
| 18 | | Rain | | ¾ |
| 19 | | | | |
| 20 | Demurrage begins | | | |

The charterer contends that the delays mentioned in the first column were due to the refusal of the master to shift his vessel astern, so as to bring her after hatch opposite the clear space on the wharf, and its refusal to open the bow ports. It is enough to say that the District Judge found on both these points in favor of the vessel, and we adopt his findings of fact; therefore this detention must be included in the lay days.

Rule V of the Maritime Exchange provides:

"If vessel is ready to discharge cargo in questionable weather consignee must receive the same."

The charterer was not at fault for the delay of three-quarters of a day on the 18th, no cargo being discharged because of rain. The failure to discharge on the 2d was said by the master to have been due to lack of room on the wharf, but by the president of the stevedoring company to lack of stevedores. The detention because of the rigging was of course part of the stevedore's duty.

[2] The charter party provided:

"Stevedore at port of discharge to be subject to approval of charterers."

In the absence of an agreement to the contrary, it is the duty of the vessel to load and discharge the cargo, and clauses regulating the subject are frequently introduced into charter parties. The normal duty of the vessel should not be transferred to the charterer, unless the intention of the parties to do so is clear. Under the language of this charter we have no doubt that the stevedore was the agent of the owners who appointed and paid it. The charterer named the Franklin

Garage Company, which did all the work of the Yellow Pine Company, and the master agreed to employ it. It is quite natural that the charterer shipper or consignee should want the privilege of approving the stevedore to be employed, so as to insure proper loading and discharging; but this privilege should not be taken to carry with it responsibility for loading and discharging the cargo. In this case the master was not obliged to employ any stevedore the charterer might name, but only one approved by it. Such a person would still be the servant of the shipowners, performing their duty of discharging the cargo. The T. A. Goddard (D. C.) 12 Fed. 174, 184; Harris v. Post, 7 Asp. Mar. Cas. N. S. 272; Harrington v. American Tie & Lumber Co., 185 Fed. 475, 107 C. C. A. 575; Carver on Carriage by Sea (4th Ed.) 274. Accordingly we think these delays in the second column, amounting to 2½ days, are to be attributed to the vessel, and the lay days, being pro tanto extended, terminated December 19th, inclusive; demurrage beginning December 20th and continuing thereafter every running day until the discharge was completed, December 27th—i. e., 8 days, at $49 per day, with interest due de die in diem.

The court below relied on the case of Irzo v. Perkins (D. C.) 10 Fed. 779, but it in no way qualified the vessel's duty to discharge the cargo, and only imputed delay to the charterers for their failure to carry out the special agreement as to the manner in which the cargo should be discharged. The court below is directed to award the libelants demurrage at the rate of $49 per day for 8 days, beginning December 20th, with interest de die in diem, with costs of the District Court to be paid primarily by the Yellow Pine Company, and secondarily by the Hilton-Dodge Company; the libelants to pay costs of this court to the Yellow Pine Company. The decree, so modified, is affirmed.