NEW YORK & CUBA MAIL S. S. CO. et al. v. LAMBORN et al.

(District Court, S. D. New York, at New York. August 31, 1925.)

1. Estoppel ⚖=87—Representations as to force majeure held not to estop charterer's assertion of modification of contract as defense to libel for demurrage; libelants not being deceived or misled.

In a libel for demurrage for delay in loading cargo, where respondents pleaded modification of contract as a defense, held that they were not estopped to plead such defense because previously, in writing, they stated they were not liable because of force majeure; such claim not deceiving or misleading libelants.

2. Shipping ⚖=184—Defense of force majeure to libel for demurrage held not sustainable under the evidence.

In a libel for demurrage because of delay in loading cargo, defense of force majeure urged by respondents held not sustainable in view of evidence.

3. Shipping ⚖=178—Charterer liable for demurrage due to strike, where charter party contained no strike exception.

Where charter party contained no strike exception, charterer was liable for demurrage for delay caused by strike, inasmuch as charterer takes risk of all unforeseen circumstances.

**4. Shipping ⚖️175—Libel for demurrage proven where libelant proved when lay days began and that ship was not clear of cargo when lay days ended.**

In a libel for demurrage, libelant's claim was made out when he proved when lay days began and that ship was not clear of cargo when lay days ended.

**5. Shipping ⚖️184—Evidence held not to show that charter party was modified as contended by respondents in libel suit.**

In a libel for demurrage for delay in loading cargo, where respondents alleged as a defense that there was a modification in the charter party, *held* that evidence did not support such contention.

**6. Shipping ⚖️184—Party pleading modification of charter party must prove same.**

The burden is on one who alleges modification of a charter party as a defense to a libel for demurrage to prove such modification.

**7. Shipping ⚖️181—Nature of demurrage and purpose of lay days stated.**

Demurrage is merely extended freight, and the purpose of lay days is to fix a period during which charterer may detain vessel and beyond which he must pay for delay as such extended freight in the form of demurrage or damages in that nature.

**8. Shipping ⚖️175—Delay in loading vessel within lay days not breach of charter entitling shipowner to discontinue performance, but demurrage payable though delay without fault of charterer.**

Delay in loading vessel within the lay days is not a breach of charter entitling shipowner to discontinue further performance under charter party, but an event within legal contemplation, though not within express contemplation of parties, for additional compensation as extended freight, and demurrage is payable, though there is no fault on part of charterer.

In Admiralty. Libel in Personam by the New York & Cuba Mail Steamship Company against Arthur R. Lamborn and others, doing business as Lamborn & Co., wherein F. G. Caffey, libelant's receiver in equity, and the Clyde Steamship Company, its principal, were made colibelants. Decree for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City, for libelants.

Van Doren, Conklin & McNevin, of New York City, for respondents.

CLAYTON, District Judge. This is a libel in personam to recover demurrage claimed to be due under the provisions of two charter parties between the New York & Cuba Mail Steamship Company as owner and Lamborn & Co., charterers, each dated January 23, 1920. Before the case was tried, and upon the libelant's petition, F. G. Caffey, its receiver in equity, and the Clyde

Steamship Company itself, the principal of the New York & Cuba Mail Steamship Company, were made colibelants, and the libel and title of the cause were conformably amended without prejudice to the antecedent proceedings. No libel or claim was filed by the receiver or the Clyde Steamship Company.

The cause was submitted for decree upon the pleadings, the libel and answer, and upon the testimony taken orally and by deposition, and the letters, telegrams, and documents introduced in evidence.

It is without dispute that the steamship Manta was hired by the respondents under the two separate charter parties, to transport from Nuevitas and Matanzas, Cuba, to (New York or) Philadelphia a cargo of sugar. One charter party provided for a cargo of 14,800 bags of raw sugar, each bag weighing about 325 pounds, to be brought from Nuevitas to Philadelphia at the rate of 45 cents per 100 pounds. The other provided for a cargo of 2,200 bags of turbinated sugar from Matanzas to Philadelphia, each bag weighing about 325 pounds, and at the rate of 44 cents and 8 mills per 100 pounds.

The Manta arrived at Nuevitas and reported at the same time to the respondents ready for loading on January 26, 1920, at 11 o'clock in the forenoon; 7,794 bags of sugar were loaded there. This much of the loading was completed on January 28, 1920, at 5 o'clock p. m. No more cargo was tendered after that, and the ship lay at Nuevitas awaiting further cargo until February 2, 1920, at noon, when she cleared for Matanzas. The vessel, the Manta, arrived at Matanzas and reported to the respondents ready for loading on February 4, 1920, at 2:30 o'clock p. m.; 8,947 bags of sugar were added to her cargo there, the loading completed on February 6, 1920 at 5 o'clock p. m.

The libel claimed demurrage as having accrued under the charter party at Nuevitas in the amount of $5,811.24, and also demurrage as having accrued at Matanzas in the amount of $353.77. The item of $176.17 for unpaid freight money was abandoned by the libelant at the hearing of the cause.

Lamborn & Co., denied any liability for demurrage at Nuevitas except for the period from January 28, 1920, at 6:19 o'clock a. m. to January 28, 1920, at 5 o'clock p. m., a period of 10 hours and 41 minutes, amounting to the sum of $444.64. They also deny that any demurrage was incurred at Matanzas, or any liability for the item of $176.17 which was eliminated from the case as above

stated. In its plea the respondents allege that there had been, a modification of the charter party entered into on or about January 28, 1920, whereby the Manta was at once to leave the port of Nuevitas where she had then taken on 7,794 bags of sugar, and proceed to Matanzas, there to load the balance of the cargo which would have been taken in the ordinary course at Nuevitas, and in addition the 2,200 bags of sugar stipulated for the Matanzas charter party, and that, by virtue of such alleged agreement, respondents were only liable for demurrage incurred up until the time that the vessel finished loading the 7,794 bags, and that this demurrage amounted to $444.64. At the trial, the libelants claimed demurrage at Nuevitas commencing at 6:19 o'clock a. m. on January 28, instead of at 4:19 o'clock p. m., on January 27, 1920, the time originally specified in the libel; and thus the time for the demurrage claimed was 5 days 5 hours and 41 minutes, thereby reducing the claim of the libelants from $5,811.24 to $5,229.12.

[1] The libelants insist the respondents are precluded from interposing the defense set forth in their plea above referred to, grounded upon the alleged modification of the contracts, for that prior to the filing of the libel respondents stated in writing to the libelants that they were not liable for demurrage because of force majeure. The terms employed by the libelant are. that, "having adopted this position, the respondents could not later, when sued, set up other and different grounds as a defense." The adjudged cases cited by the libelants' proctors in support of this contention can be distinguished from the case at bar, but it is not deemed necessary to pad this opinion with the differentiation.

The claim of force majeure urged by the respondents did not deceive or mislead the libelants; it was antecedent to the libel, and in no wise prejudiced the libelants or affected their rights which had accrued. Everything pertaining to the libelants' claim for demurrage was equally well known to both the parties, and from such statement by respondents no rights sprung to them, and no injury was done to the libelants. Indeed the libelants were not at all influenced by such representation of force majeure. And estoppel is not applicable, for it is founded on an equitable principle which can be invoked to prevent injustice and to protect those who have relied upon the acts or admissions of others, made with the expectancy that such reliance would be placed upon them. In short, it is applicable where a person has induced another to act in a particular manner to the detriment of the person misled, but that is not the case here.

It was held in effect, I think, in Turner v. Edwards, 24 Fed. Cas. 350, 351, that the very meaning of estoppel is when even an admission is intended to lead and does lead the man with whom the party is dealing into a line of conduct, then, even then, the misleading must be prejudicial, for the doctrine had its origin in the determination to prevent fraud *resulting in injustice*. In Louisville Banking Co. v. Asher (Ky.) 65 S. W. 831, it is said:

"Equitable estoppel is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might have perhaps otherwise existed, either of property, of contract, or of remedy, *as against another person who has in good faith relied upon such conduct, and has been led thereby to change his condition for the worse, and who, on his part, acquires some corresponding right, either of property, of contract, or of remedy*." (Italics supplied.)

See, also, The Alberto (C. C.) 24 F. 379, 382.

Again, to constitute estoppel it must be shown that the conduct of the party against whom it is invoked was relied upon by the other party, and thus relying he must be led to act upon it; *and he in fact must have acted upon it in such a manner as to change his position for the worse*. First National Bank v. Dean (Super.) 17 N. Y. S. 375, 377; Troy v. Rogers, 113 Ala. 131, 20 So. 999. In the latter case it is said:

"The constituents of an estoppel by conduct, as they were stated by Mr. Bigelow in his work on Estoppel (1st Ed.) p. 489, are: (1) A representation or concealment of material facts; (2) the representation must have been made with knowledge of the facts; (3) the party to whom it was made must have been ignorant of the truth of the matter; (4) it must have been made with the intention that the other party should act upon it; and (5) the other party must have been induced to act upon it."

Here, it is repeated, the libelant was not in the least deceived or misled or prejudiced by the respondents' suggestion of the defense of force majeure. It could not and did not change the status of the parties, which had been fixed by the previous facts and circumstances of the case. The respondents could

not be bound by any rule of morality or good faith not to change their intentions as to defense, nor be precluded from showing such a change because they have previously represented their intentions, to interpose that defense. The reason for the principle of estoppel fails because it could not, and, as a matter of fact, in this case did not, properly form any basis of inducement upon which the libelants could reasonably adopt as a course of action, for the libelants knew just as well at the time of this correspondence in which force majeure was mentioned that it was just as unfounded as it was at the trial of this cause. The suggestion did not influence or deter the libelants in their course of action. Moreover, the respondents' statement shows that it was no more than an ordinary declaration made in relation to a business matter between business men. It could not have any greater effect than if the respondents had simply said that they were not liable to the libelants for demurrage without giving any reason therefor, and that would have been no more than what could have been asserted under the general issue, which in no case precludes a respondent from making special defense. The libelants' rights were not impaired, nor was any advantage gained by the respondents.

[2, 3] After having carefully considered the evidence, I have concluded that the defense of force majeure is not sustained. The evidence tends to show that there was a strike among the workers on the railroad on which the sugar was to be transported from the warehouse to the vessel, but this did not affect the stevedores. It resulted in no sugar being delivered to the vessel from January 29, to February 2. But there was no strike exception in the charter party. In these circumstances the strike on the railroad could not be a defense, as the charterer took the risk of all unforeseen circumstances. Judge Sanborn in Empire Transp. Co. v. P. & R. C. & I. Co., 77 F. 921, 23 C. C. A. 566, 35 L. R. A. 623, referring to the charterer, said:

"He bears the risk of delay arising from the crowded state of the place at which the ship is to load or discharge (Randall v. Lynch, 2 Camp. 352), or from frost (Barret v. Dutton, 4 Camp. 333), or bad weather (Thiis v. Byers, 1 Q. B. Div. 244), preventing access to the vessel, or from acts of the government of the place prohibiting export, or preventing communication with the ship (Barker v. Hodgson, 3 Maule & S. 267; Bright v. Page, 3 Bos. & P. 295, note). And

8 F.(2d)—25

it is immaterial that the shipowner also is prevented from doing his part of the work within the agreed time, unless he is in fault. The charterer takes the risk."

See Carv. Carr. by Sea, §§ 610, 611; Davis v. Wallace, 7 Fed. Cas. 182 (No. 3,657); Railroad Co. v. Northam, 19 Fed. Cas. 492 (No. 11,090); Williams v. Theobald, 15 F. 465, 471; Manson v. Railroad Co., 31 F. 297; Sixteen Hundred Tons of Nitrate of Soda v. McLeod, 10 C. C. A. 115, 61 F. 849; Burrill v. Crossman, 16 C. C. A. 381, 69 F. 747, 752. See, also, Budgetts & Co. v. Binnington & Co. (1891) 1 Q. B. 35, 6 Asp. Mar. Cas. (N. S.) 592.

[4] The shipowners in this case have proven when the lay days began and when they ran out, and that the ship was not clear of cargo; therefore the case of the libelant is proven. The Budgetts Case was cited with approval in The Hans Maorak, 266 F. 806 (C. C. A. 2d Cir.). There is no claim that there was any force majeure at Matanzas, for the loading, and when the lay days began and when they ended at Matanzas is found from the evidence to be true as claimed in the libel at the time of the hearing.

[5, 6] Coming now to the defense raised by the special plea that there was a modification of the Nuevitas charter party, alleged to have been entered into on or about January 28, 1920, whereby the Manta was at once to leave the port of Nuevitas where she had taken on 7,794 bags of sugar and proceed to Matanzas, there to load the balance of the cargo which would have been taken on in the ordinary course of events at Nuevitas, and in addition the 2,200 bags of turbinated sugar stipulated for in the Matanzas charter party, and that, under said agreement, the respondents were only liable for demurrage up to the time the vessel had finished loading the 7,794 bags, and which amounted to the sum of $444.64, I have carefully considered all the evidence pertinent to this plea, and have reached the conclusion that the evidence does not support the contention thereby set up. Of course the burden is upon the respondents to show the truth of this affirmative plea, and, the respondents having failed to reasonably satisfy me of the truth of this defense, I find the issue on this plea in favor of the libelants and against the respondents. It is not deemed necessary to set out in this opinion the evidence bearing upon this question.

[7] Demurrage is merely extended freight, and the purpose of lay days is to fix a period

during which the charterer may detain the vessel, and beyond which he must pay for delay as such extended freight in the form of demurrage or damages in that nature. Leary v. Talbot, 160 F. 914, 915, 88 C. C. A. 96. In Ben Franklin Transp. Co. v. Federal Sugar Refining Co., 242 F. 43, 45, 46, 154 C. C. A. 635, in the opinion of the court, Judge Rodgers, said:

"Demurrage is an allowance for the detention of a vessel in loading or unloading beyond the time allowed for the purpose in, the charter party or bill of lading. It is in the nature of extended freight, and is intended as a compensation to the vessel for the freight she might have earned during the period of detention.

[8] The delay is loading the vessel within the lay days was not a breach of the charter entitling the owner of the vessel to discontinue further performance under the charter party, but an event within the legal contemplation, though it may not have been in the expressed contemplation of the parties, for additional compensation as extended freight. Cross v. Beard, 26 N. Y. 85, 90; Steger v. Orth, 258 F. 625, 170 C. C. A. 73. And demurrage is payable, though there is no fault on the part of the charterer. Empire Transp. Co. v. P. & R. C. & I. Co., supra.

The court finds from the evidence that the lay days began at Nuevitas at 12 o'clock m. on January 26, 1920, and that the 1 day 5 hours and 19 minutes allowed for loading the cargo expired on January 28, 1920, at 6:19 o'clock a. m., and that the total amount of demurrage collectible thus accrued as extended freight at Nuevitas, is $5,204.16. It was admitted in the answer and on the trial that the lay days at Matanzas began at 2:30 o'clock p. m. February 4, 1920. The number of days allowed for loading at the charter rate, taking 8 hours as a working day, was 1 day 3 hours and 56 minutes. It is therefore ascertained that the lay days expired on February 6, 1920, at 8:26 o'clock a. m., and that the vessel was on demurrage from 8:26 o'clock a. m., February 6, 1920, to 5 o'clock p. m. on the same day, when the loading was completed. Consequently there was 8 hours and 34 minutes of demurrage, now ascertained to be in dollars $356.36.

The conclusion reached by the court is that the libelants are entitled to $5,204.16 for demurrage at Nuevitas and $356.36 for demurrage at Matanzas, together with interest on both of said sums, and the costs in this behalf expended, and it is so decreed.